UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
KURTIS PHILLIP,

                    Petitioner,

                                        <u>MEMORANDUM AND ORDER</u>
          -against-                     14-CR-0264(JS)


UNITED STATES OF AMERICA,

                    Respondent.
------------------------------------X
APPEARANCES
For Petitioner:      Kurtis Phillip, <u>pro se</u>
                     #85447-053
                     Hazelton U.S. Penitentiary
                     P.O. Box 5000
                     Bruceton Mills, WV 26525

For Respondent:      Michael R. Maffei, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, NY 11722


SEYBERT, District Judge:

          Pursuant to a Plea Agreement with the Government that

included a waiver of his right to appeal or collaterally attack

his conviction and sentence, Kurtis Phillip ("Petitioner") entered

a guilty plea to discharging a firearm during a crime of violence,

in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  Following the

guilty plea, Petitioner was sentenced to the statutory minimum

term of one hundred twenty (120) months of incarceration followed

by five years of supervised release.  (See J., D.E. 339.)  On

December 27, 2016, Petitioner, acting <u>pro se</u>, petitioned this Court

to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. (See Pet., D.E. 401[1].) For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

On February 12, 2016, Petitioner entered a guilty plea in the United States District Court for the Eastern District of New York to Count Twenty Seven of a Superseding Indictment, charging him with discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (See J. at 1.) Section 924(c)(1)(A)(iii) states, in pertinent part, that "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall in addition to the punishment provided for such crime of violence . . . if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C. § 924(c)(1)(A)(iii). Section 924(c) defines a "crime of violence" as "an offense that is a felony and (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) by its nature, involves a substantial risk that physical force

---

[1] The Court will use the page numbers generated by the ECF System when referring to the Petition.

against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3).

Count Twenty-Seven of the Superseding Indictment named Count Twenty-Five and Count Twenty-Six as the underlying crimes of violence, Count Twenty-Five charged Petitioner with conspiring to commit the attempted murder of a member of a rival gang in aid of racketeering activity and Count Twenty-Six charged conspiracy to commit assault with a dangerous weapon in aid of racketeering activity. (See Superseding Indictment, D.E. 120, at 26-27.) Both of these racketeering-related offenses are predicated on New York State Penal Law Offenses; Count Twenty Five is predicated on Attempted Murder in the Second Degree in violation of New York Penal Law §§ 125.25(1), 110.00, and Count Twenty Six is predicated on Assault in the Second Degree in violation of New York Penal Law § 120.05(2). (See Superseding Indictment, at 26-27.)

Petitioner's guilty plea took place before the Honorable Anne Y. Shields, United States Magistrate Judge, during which Petitioner was asked a series of standard plea allocution questions. Before Petitioner entered his guilty plea, Judge Shields confirmed that he was competent to plead guilty and that he understood the rights he forfeited by choosing to plead guilty. (See Plea Tr., D.E. 434-2, 4:5-8:22.) Petitioner confirmed that he entered into a Plea Agreement with the Government, and the

appeal waiver provisions were placed on the record.  (Plea Tr. 8:23-10:9.)  The Government stated:

> Your Honor, the defendant has signed a standard plea agreement with the government. In that agreement, he has agreed to plead guilty.  In exchange, he has also agreed that he will waive his right to appeal and to file any petition or challenge pursuant to 28 USC 2255, as long as the Court sentences him to 120 months or less.

(Plea Tr. 9:1-7.)    Further, Petitioner confirmed that he was satisfied with his counsel's representation, that his guilty plea was voluntary and of his own free will, and that he was guilty of the charge.  (Plea Tr. 13:3-24.)  The Petitioner then admitted the following:

> [O]n July 4th, 2011, I went to a house on Bainbridge Avenue in Roosevelt, New York with a gun because I heard that members of the Bloods was going to be at the house party.  I went over there and shot at the Bloods because I'm a [Crip].

(Plea Tr. 14:24-15:3.)  Additionally, the Government summarized the evidence against Petitioner.  (Plea Tr. 15:4-15:24.)  Judge Shields then stated the following:

> [B]ased upon the information that's given to me, I find that the defendant is acting voluntarily, that he fully understands his rights and consequences of his plea and that there is indeed, a factual basis for the plea. I will therefore recommend that the district court accept the plea of guilty.

(Plea Tr. 16:1-7.)

Petitioner was sentenced on August 4, 2016. Prior to imposing sentence, the Court informed Petitioner it considered the Plea Agreement, the Probation Department's recommendation of one hundred eighty (180) months' imprisonment, and letters sent on Petitioner's behalf. (See Sentencing Tr., D.E. 434-4, 3:23-4:24.) The Government acknowledged that it and Petitioner agreed upon the mandatory minimum sentence of one hundred twenty (120) months' incarceration, though the Court was not bound by this agreement. (Sentencing Tr. 7:16-21.) Further, the following exchange took place regarding the nature of the charge:

> Ms. Boeckmann [for the Government]: The only other thing that the Government would ask the Court to do today is just in light of Johnson, as I have done before in some of these cases, is that the Court make a finding that the 924(c) this defendant pled to, and I will remind the Court that he allocuted to discharging a firearm in connection with the crime of violence, specifically a shooting that occurred on July 4, 2011 when an individual was shot. So the underlying crime of violence relating to the 924(c) was attempted murder and assault. I would just ask the Court to make a ruling that you find that that satisfies the force clause of 924(c) for those purposes before we proceed to sentence.
>
> The Court: All right. Anything you would like to say in response, Ms. Macedonio?
>
> Ms. Macedonio [for Petitioner]: Judge, this is obviously an area that is not well settled at all either within the Circuit or Supreme Court. So, regardless of the Court's finding and not waiving any of Mr. Phillip's appellate rights.

> The Court: You are certainly entitled to do
> that.  However, the Court finds overwhelmingly
> there was force involved not only with the
> shooting, but the surrounding circumstances
> and the related gang activity.

(Sentencing Tr. 8:15-9:12.)  Subsequently, the Court imposed the

negotiated-for sentence of one hundred twenty (120) months of

imprisonment followed by five years of supervised release.

(Sentencing Tr. 11:1-24.)

Petitioner did not directly appeal his conviction or

sentence.  However, Petitioner filed the instant Petition to vacate

his conviction and sentence pursuant to 28 U.S.C. § 2255 on

December 27, 2016, raising a number of claims, including grounds

of ineffective assistance of counsel.  (See Pet. at 4-8.)  The

Government filed a response on March 27, 2017, arguing the

Petitioner's claims are all without merit.  (See Resp't's Br.,

D.E. 434, at 1-14.)  On June 14, 2017, Petitioner submitted a reply

in further support of the Petition.  (See Pet'r's Reply Br.,

D.E. 499.)

DISCUSSION

The Court will first address the applicable legal

standard before turning to the merits of the Petition.

I.  Legal Standard

To warrant habeas corpus relief under § 2255 a petitioner

must show "that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In other words, a collateral attack is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417 (1962)). When determining whether to grant habeas relief, "the scope of review on a § 2255 motion should be 'narrowly limited' in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (citations omitted). When seeking habeas relief, the petitioner has the burden of proving his claims by a preponderance of the evidence. Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

Concerning evidentiary hearings, § 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with

respect thereto." 28 U.S.C. § 2255(b). However, "[a]iry generalities, conclusory assertions and hearsay statements will not suffice [to warrant an evidentiary hearing] because none of these would be admissible evidence at a hearing." United States v. Aiello, 814 F.2d 109, 113-14 (2d Cir. 1987). As such, "[t]he petitioner must set forth specific facts which he is in a position to establish by competent evidence." LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005) (alteration in original) (internal quotation marks and citations omitted). Critically, "[i]t is within the district court's discretion to determine whether a hearing is warranted." Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (citation omitted).

As Petitioner's submissions were filed pro se, the Court will liberally construe them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, this does not excuse Petitioner "'from compl[ying] with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

## II. Applicability of Waiver

It is "well established that a knowing and voluntary waiver of the right to appeal is generally enforceable." United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001); Garcia-

Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (finding that waivers of collateral attack under § 2255 are enforceable). However, the Second Circuit has held that there are instances where a petitioner may appeal or collaterally attack a conviction notwithstanding the existence of an appeal waiver, including: "(1) the arbitrary practice of sentencing without proffered reasons which . . . could in some cases amount to an abdication of judicial responsibility subject to mandamus . . .; (2) the defendant's right to appeal on the grounds of ineffective assistance of counsel, . . .; and (3) the arguably unconstitutional consideration of naturalized status." United States v. Rosa, 123 F.3d 94, 98 (2d Cir. 1997) (internal quotation marks and citations omitted). Therefore, "where there is a claim of ineffective assistance of counsel that calls into question the legitimacy of the waiver itself, the waiver will not foreclose a section 2255 petition." Riggi v. United States, No. 04-CV-7852, 2007 WL 1933934, at *5 (S.D.N.Y. July 5, 2007). However, a claim of ineffective assistance of counsel will not circumvent all appeal waivers; rather, "a petitioner [must] demonstrate that he unknowingly or involuntarily agreed to the plea [agreement] directly owing to the ineffective assistance of his counsel." Ramirez-Hernandez v. United States, No. 09-CV-4107, 2012 WL 1838286, at *4 (E.D.N.Y. May 21, 2012).

Pursuant to his Plea Agreement, Petitioner stipulated that he would not file an appeal or otherwise challenge his conviction or sentence in the event the Court sentenced him to a term of imprisonment of one hundred twenty (120) months or less. (See Plea Agreement, D.E. 434-1, ¶ 4.)  As discussed above, Petitioner was sentenced to a term of one hundred twenty (120) months followed by five (5) years of supervised release, a term within the scope of the appeal waiver.  (J. at 2-3.)

Following an examination of the underlying record, the Court finds that Petitioner executed the appeal waiver knowingly and voluntarily.  During Petitioner's plea allocution, the Government explained the appeal waiver provisions contained in the Plea Agreement.  Additionally, Petitioner confirmed that other than the Plea Agreement, no promises had been made to coerce his plea.  (Plea Tr. 8:23-9:7, 13:18-21.)  The Court finds the appeal waiver to be enforceable.  However, to the extent Petitioner is seeking relief based on ineffective assistance of counsel that calls into question the validity of the appeal waiver, the Court will proceed to consider the merits of those claims.

III.  Ineffective Assistance of Counsel

Petitioner alleges that he received ineffective assistance of counsel when counsel failed to: (1) object to the Government's discovery violations; (2) make arguments regarding sentencing disparities; (3) argue for a downward departure due to

Petitioner's medical condition; and (4) pursue <u>Johnson</u> related arguments. (<u>See</u> Pet'r's Br., D.E. 401-1, at 2-21.) The Court emphasizes that though Petitioner titles his claims as grounds for ineffective assistance of counsel, the Petitioner has not sufficiently claimed that he received ineffective assistance of counsel in entering his Plea Agreement nor "that he unknowingly and involuntarily agreed to the plea directly owing to the ineffective assistance of counsel." <u>Ramirez-Hernandez</u>, 2012 WL 1838286, at *4. Thus, these claims should not survive the valid appellate waiver. However, in an abundance of caution, the Court proceeds to evaluate the merits of the claims.

A. <u>Standard</u>

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's performance was so inadequate that he was denied his Sixth Amendment right to counsel. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). To satisfy the <u>Strickland</u> test, a petitioner must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." <u>United States v. Cohen</u>, 427 F.3d 164, 167 (2d Cir. 2005) (quoting <u>Strickland</u>, 466 U.S. at 688, 693, 104 S. Ct. at 2052). Under the first prong of the <u>Strickland</u>

test, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Under the second prong of the Strickland test, a petitioner must establish that he was prejudiced by counsel's flawed performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

In the context of a guilty plea, a petitioner "must show that the [P]lea [A]greement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotations marks and citations omitted). This analysis focuses on the plea agreement process, not on pre-plea occurrences. Id. It is clear that "[c]laims by petitioners that their pleas were involuntarily made due to the erroneous advice or unrealized promises made by counsel 'afford an all too easy avenue for the invalidating of conviction on pleas of guilty.'" Hernandez v. United States, 839 F. Supp. 140, 143 (E.D.N.Y. 1993) (quoting United States v. Horton, 334 F.2d 153, 154 (2d Cir. 1964)). Therefore, "when considering the voluntariness of a defendant's plea, courts look to the voir dire of the defendant upon each plea to determine whether the plea reflected a knowing, free and

rational choice of the alternatives open to the accused." Id. (internal quotation marks and citation omitted).

B. Analysis

1. Discovery Violations

Petitioner claims that he received ineffective assistance of counsel when the Government failed to comply with their discovery obligations, specifically by withholding exculpatory and impeachment material. (See Pet'r's Br. at 3-4.) Within this argument, Petitioner contends that his attorney failed to adequately investigate his case. (Pet'r's Br. at 11-12.)

Considering Petitioner's claims regarding outstanding exculpatory information, the Court finds that Petitioner failed to demonstrate that counsel's strategy fell below an objectively reasonable standard of conduct. Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. The "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963). Undisclosed evidence is "material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999) (quoting United States v.

_Bagley_, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985)). Crucially, "[o]bjections to the nature of the evidence obtained by and available to the prosecution will not survive a plea of guilty and are not available on an application for a writ of habeas corpus." _U.S. ex. rel. Mendez v. Fish_, 259 F. Supp. 146, 148 (S.D.N.Y. 1965) (collecting cases).

Assuming, _arguendo_, that this claim survived Petitioner's guilty plea, it is without merit. Petitioner explains his claim, stating that witness accounts contradict Petitioner's role in the shooting and that the Government "suppress[ed] . . . exculpatory [and] impeachment material evidence that was never handed over . . . specifically the numerous different accounts of the events in question." (_See_ Pet'r's Reply Br. at 7-9.) Petitioner's arguments are wholly conclusory as he fails to articulate what withheld evidence was "material either to guilt or to punishment." _Brady_, 373 U.S. at 87, 83 S. Ct. at 1197. Therefore, Petitioner cannot demonstrate that he is entitled to habeas corpus relief on this ground.

As to Petitioner's argument that counsel failed to investigate his case, it is clear that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." _Strickland_, 466 U.S. at 691, 104 S. Ct. at 2066. However, a reasonable investigation does not "compel defense counsel to investigate

comprehensively every lead or possible defense, or to scour the globe on the off-chance something will turn up." Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005) (internal quotation marks and citations omitted). "'[A] petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced.'" Halo v. United States, No. 06-CV-5041, 2007 WL 1299158, at *13 (E.D.N.Y. Apr. 30, 2007) (quoting Simmons v. Gramley, 915 F.2d 1128, 1133 (7th Cir. 1990)). Here, Petitioner makes only conclusory allegations that counsel did not fully investigate the matter. Therefore, Petitioner has not demonstrated that his attorney's conduct fell below an objectively reasonable standard, and thus, he cannot satisfy the Strickland standard. See Strickland, 466 U.S. at 688, 104 S. Ct. at 2064.

### 2. Sentencing Disparities

Petitioner contends that he received ineffective assistance of counsel, evidenced by the fact that he received a disparate sentence from similarly situated individuals. Initially, as discussed above, this claim is precluded by his valid appeal waiver. However, even if this claim survives the appeal waiver, Petitioner fails to provide an example of a similarly situated individual sentenced differently than him. In fact,

Petitioner is aware that his one hundred twenty month (120) sentence is considerably reduced, as he was informed during his plea proceedings that he faced a maximum term of life imprisonment, and the probation department recommended a term of one hundred eighty (180) months. (See Plea Tr. 10:21-11:1, Sentencing Tr. 4:5-6.) Ultimately, Petitioner cannot demonstrate that the manner in which he was sentenced was the result of his attorney's objectively unreasonable performance, considering the beneficial plea disposition for which his counsel successfully negotiated. Strickland, 466 U.S. at 688, 104 S. Ct at 2064.

### 3. Downward Departure for Medical Condition

Petitioner claims that he received ineffective assistance of counsel when his attorney failed to request that the Court sentence him to below the mandatory minimum sentence of one hundred twenty (120) months' incarceration, due to his serious health problems and recent liver transplant. (See Pet'r's Br. at 6-7.)

"[D]istrict courts generally lack the authority to impose a sentence below the mandatory minimum." United States v. Oliveras, 359 F. App'x 257, 258 (2d Cir. 2010) (summary order). However, "[a] district court may sentence a defendant below the statutory minimum in two circumstances: (1) where the defendant provided substantial assistance and the government moved to release the defendant from the statutory minimum under 18 U.S.C.

16

§ 3553(e), and (2) where the so-called 'safety-valve' exception applies." Id. at 258 n.1 (citing to 18 U.S.C. § 3553(f)). In this matter, the Government did not move for a downward departure from the statutory minimum sentence, nor can Petitioner demonstrate he qualifies for any exceptions to the mandatory minimum sentencing structure. Accordingly, counsel's choice not to move for a downward departure of Petitioner's mandatory minimum sentence is not an error of constitutional magnitude, and counsel's conduct did not fall below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct at 2064.

### 4. Johnson Related Arguments

Petitioner argues that he received ineffective assistance of counsel when his attorney failed to raise Johnson related arguments. (Pet. at 4.) Specifically, Petitioner claims that following a change in the law, his conviction under 18 U.S.C. § 924(c)(1)(A) "is invalid, denies fair notice, denies due process[,] is ambiguous, unconstitutional, [and does] not meet both the 'Violence & Force Clauses' in light of Johnson I and Johnson II." (Pet'r's Br. at 5-8 (citing to Johnson v. United States, 559 U.S. 133, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010) ("Johnson I"); Johnson v. United States, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) ("Johnson II")). In response, the Government states that as "the underlying crime for which the Petitioner was convicted constitutes a crime of violence, Johnson does not apply,"

and this Court has already found that Petitioner's conviction satisfies the force clause. (See Resp't's Br. at 7.)

For brief background, in Johnson II, the Supreme Court held that the "residual clause" in 18 U.S.C. § 924(e)(2)(B) of the Armed Career Criminal Act was unconstitutionally vague. See Johnson II, 135 S. Ct. at 2563. Section 924(e)(2)(B) provided for enhanced sentences for individuals with at least three prior convictions for serious drug offenses or violent felonies. Id. at 2555. A portion of § 924(e)(2)(B), referred to as the "residual clause," defined a violent felony as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another." See 18 U.S.C. § 924(e)(2)(B); Johnson II, 135 S. Ct. at 2556. Here, Petitioner asks the Court to extend Johnson's ruling and find that it invalidates his conviction under § 924(c)(1)(A)(iii), a separate statute that provides for enhanced sentencing when an individual discharges a firearm during a crime of violence. See 18 U.S.C. § 924(c)(1)(A)(iii).

Initially, a change in the law does not automatically invalidate a valid appeal waiver; "[o]n the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreement." United States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005). Additionally, the Second Circuit has "upheld [appeal waivers] even in circumstances where the sentence was conceivably imposed in an

illegal fashion or in violation of the [Sentencing] Guidelines,
but yet was still within the range contemplated in the plea
agreement." United States v. Gomez-Perez, 215 F.3d 315, 319 (2d
Cir. 2000); see also Coffield v. United States, No. 16-CV-3741,
2016 WL 8737575, at *5-6 (S.D.N.Y. Nov. 30, 2016). Further, the
Second Circuit has confirmed that "'[e]ven assuming [ ] that [a
defendant] was sentenced under a [Sentencing] Guidelines provision
that is unconstitutional after Johnson, this Court has held that
a defendant's inability to foresee a change in the law does not
supply a basis for failing to enforce an appeal waiver.'" Rodgers
v. United States, 709 F. App'x 30, 32 (2d Cir. 2017) (summary
order) (quoting Sanford v. United States, 841 F.3d 578, 580 (2d
Cir. 2016)) (third alteration in original). As set forth above,
Petitioner executed a valid appeal waiver, and thus this claim is
barred.

Assuming, arguendo, that this claim was not barred by
the appeal waiver, it is nonetheless without merit. Petitioner
fails to provide any authority to support his contention that his
predicate crimes are not crimes of violence pursuant to Section
924(c). As stated above, during Petitioner's sentencing
proceeding, the Court found that the underlying charges for
Petitioner's conviction under Section 924(c)(3)(A) are both crimes
of violence pursuant to the force clause; the Court again comes to
this conclusion. In the instant matter, Count Twenty-Five and

Twenty Six are crimes in aid of racketeering activity, and "[b]ecause racketeering offenses hinge on the predicate offenses comprising the pattern of racketeering activity, [the Second Circuit looks] to the predicate offenses to determine whether a crime of violence is charged." United States v. Ivezaj, 568 F.3d 88, 96 (2d Cir. 2009). Further, as guided by the Second Circuit, both of the predicate crimes--Attempted Murder in the Second Degree and Assault in the Second Degree--are categorically crimes of violence under the force clause of Section 924(c)(3)(A). See United States v. Scott, 681 F. App'x 89, 95 (2d Cir. 2017) (stating "[a]ttempted murder in the second degree is a crime unmistakably involving 'an attempted use . . . of physical force' within § 924(c)(3)(A)"); United States v. Walker, 442 F.3d 787, 788 (2d Cir. 2006) (stating the following regarding a conviction of Attempted Assault in the Second Degree: "categorically, his conviction involved an attempt to cause physical injury by means of a deadly weapon or dangerous instrument. To (attempt to) cause physical injury by means of a deadly weapon or dangerous instrument is necessarily to (attempt to) use 'physical force,' on any reasonable interpretation of that term, and necessarily creates 'a serious potential risk of physical injury to another"). As the Court finds that Petitioner's predicate crimes are categorically crimes of violence pursuant to the force clause contained in Section 924(c)(3)(A), the Court need not further address whether,

following _Johnson_, convictions under Section 924(c)(3)(B) would be deemed unconstitutional.

## IV. Sentence Reduction

Petitioner argues that he is entitled to a reduced sentence due to "post-sentencing rehabilitation accomplishments downward departure considerations in light of statutory law 18 U.S.C. Section 3553(a)." (Pet. at 5.) Though Petitioner provides little guidance on what post-sentencing accomplishments he refers to, he contends that the Supreme Court's decision in _Pepper v. United States_, 562 U.S. 476, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) supports his request for a reduced sentence. (Pet'r's Br. at 12-13.) In _Pepper_, the Supreme Court held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." _Pepper_, 562 U.S. at 481, 131 S. Ct. at 1236. Here, Petitioner's case is in a different procedural posture than _Pepper_; Petitioner is not before this Court after his sentence was set aside. Rather, Petitioner is before the Court having received the mandatory minimum statutory sentence, and he is unable to demonstrate that he is entitled to a downward departure from the statutory minimum. Petitioner's request for a reduced sentence is DENIED.

V. Invalid Guilty Plea

Petitioner claims that he is entitled to habeas relief as his guilty plea was invalid because it was not voluntarily and knowingly made. (Pet. at 7.) In Petitioner's reply to the Government's opposition, he explains the basis for this claim, arguing that his plea was invalid as: (1) his counsel misinformed him that he would receive a larger sentence if he failed to plead guilty; and (2) he was pressured by co-defendants and counsel to plead guilty. (See Pet'r's Reply Br. at 8-11.) Assuming, arguendo, that the appeal waiver does not bar review of this claim, Petitioner's arguments regarding his guilty plea are conclusory, without merit, and contradicted by the record.

A. Legal Standard

The well-established standard under which courts review a guilty plea is whether the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Hill v. Lockhart, 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). "A plea is considered intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way, and it is considered voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the

defendant's sheer inability to weigh his options rationally."
Manzullo v. People of N.Y., No. 07-CV-0744, 2010 WL 1292302, at *5
(E.D.N.Y. Mar. 29, 2010) (internal quotation marks and citation
omitted). "Solemn declarations in open court carry a strong
presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74,
97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977). Further, "[t]he
subsequent presentation of conclusory allegations unsupported by
specifics is subject to summary dismissal, as are contentions that
in the face of the record are wholly incredible." Id.

   B. Analysis

         Upon a review of the underlying proceedings, the Court
finds that Petitioner knowingly and voluntarily entered a guilty
plea, with knowledge of the rights he was forfeiting by pleading
guilty, as well as a thorough discussion of the factual basis for
the plea. During the plea allocution, Judge Shields confirmed
that Petitioner understood the plea proceedings in their entirety.
During the guilty plea, the following was stated:

         The Court: Are you ready to plead?

         The Defendant: Yes.

         The Court: Turning to your lawyer, do you know
         of any legal reason why the defendant should
         not plead guilty?

         Ms. Macedonio: No, your Honor.

         The Court: Back to the defendant. Are you
         satisfied with your legal representation up
         until this point?

The Defendant: Yes.

The Court: Has your lawyer done a good job for you?

The Defendant: Yes.

The Court: What is your plea?

The Defendant: Guilty.

The Court: Are you making the plea of guilty voluntarily and of your own free will?

The Defendant: Yes.

The Court: Has anyone threatened or forced you to plead guilty?

The Defendant No.

The Court: Other than the agreement with the government as we stated on the record, has anyone made any promises that caused you to plead guilty?

The Defendant: No.

(Plea Tr. 12:22-13:21.) The terms of the Plea Agreement were placed on the record and Petitioner confirmed that he understood that he was facing a maximum sentence of life imprisonment if convicted at trial. (Plea Tr. 9:1-11:1.) Though Petitioner now claims that he was not advised of the sentencing ramifications of his guilty plea and that he received threats from counsel and co-defendant to plead guilty, upon a review of the record the Court does not find these allegations credible. The record of Petitioner's guilty plea contradicts these allegations, as it

includes explicit statements that the plea was not the result of threats or coercion and a discussion of the potential sentences Petitioner faced. Ultimately, "[a] criminal defendant's self-inculpatory statements made under oath at his plea allocution . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them." Adames v. United States, 171 F. 3d 728, 732 (2d Cir. 1999) (internal quotation marks and citations omitted). As set forth above, Petitioner's plea allocution shows that his choice to plead guilty was both knowing and voluntary, and as such, Petitioner's attacks on the nature of his guilty plea do not provide a basis for habeas relief.

CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 (Docket Entry 401) is DENIED.

Additionally, on January 2, 2019, Petitioner filed a "motion for an order directing attorney of record to surrender defense file" which seeks an order from the Court to direct his former defense counsel to provide him all documentation in relation to the instant matter. (See Motion, D.E. 573.) Generally, "[a] petitioner in a habeas corpus proceeding generally does not have a right to discovery unless the petitioner can show good cause." Garafola v. United States, 909 F. Supp. 2d 313, 336 (S.D.N.Y. 2012). As discussed above, Petitioner has not demonstrated that

he is entitled to relief as a matter of law under § 2255 and has provided no specific allegations that any additional materials will entitle him to such relief.

Because there can be no debate among reasonable jurists that Petitioner was not entitled to habeas relief, the Court does not issue a Certificate of Appealability.  28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).  The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and mark this matter CLOSED.

Accordingly, as the Court denies the instant Petition in its entirety, the Court declines to issue said order.


                         SO ORDERED.


                         /s/ JOANNA SEYBERT
                         Joanna Seybert, U.S.D.J.

Dated:      February   4  , 2019
            Central Islip, New York