```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

         -against-                          MEMORANDUM & ORDER
                                            14-CR-0264-10(JS)
KURTIS PHILLIP,

                  Defendant.
----------------------------------X
APPEARANCES
For United States:    Michael R. Maffei, Esq.
                      Christopher C. Caffarone, Esq.
                      Nicole Boeckmann, Esq.
                      Madeline M. O'Connor, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, New York 11722

For Defendant:        Kurtis Phillip, pro se
                      85447-053
                      FCI Butner
                      Federal Correctional Institution 2
                      P.O. Box 1500
                      Butner, North Carolina 27509
```

SEYBERT, District Judge:

Defendant Kurtis Phillip ("Defendant"), proceeding pro se, seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in light of health concerns surrounding the COVID-19 pandemic and his medical conditions. (Def. Mot., D.E. 632; Def. Suppl. Mot., D.E. 642; Def. Reply, D.E. 663.) The Government opposes the motion. (Gov't Opp., D.E. 634; Gov't Suppl. Opp., D.E. 644.) For the reasons set forth below, the motions are DENIED.

BACKGROUND

Defendant was indicted on or around October 21, 2014 and has been detained since October 27, 2014. (Superseding Indictment (S-3), D.E. 57; Order of Detention, D.E. 78.) On July 28, 2015, the Government filed a Superseding Indictment (S-5) charging Defendant with racketeering (Count 1); racketeering conspiracy (Count 2);[1] attempted murder of rival gang members (Count 25); assault of a rival gang member with dangerous weapons: shooting of John Doe #10 (Count 26); discharging firearms during crimes of violence: attempted murder and assault of John Doe #10 (Count 27); felon in possession of a firearm (Count 36); conspiracy to murder John Doe #6 (Count 46); attempted murder John Doe #6 (Count 47); assault with a dangerous weapon: shooting of John Doe #6 (Count 48); witness retaliation (Count 49); witness retaliation conspiracy (Count 50); discharging a firearm during crimes of violence related to John Doe #6 (Count 51); conspiracy to distribute controlled substances (Count 56); use of firearms during drug trafficking crime (Count 57); Hobbs Act robbery conspiracy (Count 58); Hobbs Act robbery (Count 59); brandishing firearms during crimes of violence with respect to the Hobbs Act

---

[1] In April 2013, Defendant was arrested, detained, and tried in State court for the conduct charged in Count 1 and Count 2. (PSR, D.E. 298, ¶¶ 12, 23, 51, 101.) Defendant remained incarcerated through February 2014 when he was acquitted in the State case. (Id.)

counts (Count 60); conspiracy to murder and assault rival gang members with dangerous weapons (Count 61); conspiracy to deal in firearms (Count 62); and illegal dealing in firearms (Count 63). (Superseding Indictment (S-5), D.E. 120.) The charges arise out of Defendant's membership in the Crips, a street gang, and his involvement in planning and shooting at a rival street gang member, among other violent acts on behalf of the Crips. (Superseding Indictment (S-5) ¶¶ 1-2, 78-82.)

On February 12, 2016, Defendant pled guilty to discharging firearms during crimes of violence: attempted murder and assault of John Doe #10 (Count 27). (Min. Entry, D.E. 215.) Under the plea agreement, the Government and Defendant agreed to jointly recommend a sentence of 120 months' incarceration. (See Def. Sentencing Memo., D.E. 330, at 1.) The offense carried a ten year (120 months) statutory minimum and probation recommended 180 months' imprisonment. (Presentence Report ("PSR"), D.E. 298, ¶¶ 22, 90-91; see Probation Recommendation, D.E. 298-1, at 3.) The PSR indicated that Defendant experienced End Stage Liver Disease while previously incarcerated and underwent a liver transplant on September 23, 2013. (PSR ¶¶ 65-66.) Defendant's condition requires constant monitoring. (PSR ¶¶ 67, 102.)

On August 4, 2016, the Court sentenced to Defendant to 120 months', or 10 years', imprisonment.[2] (Min. Entry, D.E. 336; Sent'g J., D.E. 339). During sentencing, the Court recommended that Defendant serve his sentence at a medical facility, FCI Butner, his preferred location. (Sent'g Tr., D.E. 580, at 9:19-10:4, 11:20-24; Sent'g J. at 2.) Defendant is eligible for release to home confinement on or around May 26, 2022, six months before his release date of November 26, 2022. (Def. Reply at 14; Sentence Monitoring Computation Data Form, D.E. 663, at ECF p. 52.)

As of the date of this Order, Defendant has been detained for approximately six years and has served nearly four years of his sentence. Defendant is incarcerated at FCI Butner Medium II ("FCI Butner II"), one of four complexes within the Federal Correctional Complex Butner. See Our Locations, Bureau of Prisons, https://www.bop.gov/locations/search.jsp?q=FCC+Butner&name=Butner&facilityType=FCC (last visited Sept. 21, 2020). According to the information maintained by the BOP for FCI Butner II, as of September 18, 2020, 3 inmates are listed as "positive" for COVID-19 and 6 inmates and 2 staff members are listed as "recovered" from the virus. See COVID-19 Cases, Bureau of Prisons, http://www.bop.gov/coronavirus/ (last visited Sept. 21, 2020).

---

[2] Although he is proceeding pro se, Defendant was represented by counsel at the time of his plea and sentencing.

4

DISCUSSION

I. Legal Standard

"'A court may not modify a term of imprisonment once it has been imposed except pursuant to statute.'" United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, No. 04-CR-0743, 2020 WL 497987, at *1 (S.D.N.Y. Apr. 6, 2020)). As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provides:

> The court may not modify a term of imprisonment once it has been imposed except that--in any case--the court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

A defendant seeking relief under Section 3582(c)(1)(A) "bears the burden of showing that his release is justified." United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020); see also United States v. Fleming, No. 18-CR-0197, 2020 WL 2838511, at *2 (E.D.N.Y. June 1, 2020) ("It is [defendant's] burden to show that there are 'extraordinary and

compelling reasons' that warrant a modification of his sentence.").

## II. Analysis

Defendant filed his motion on or around May 11, 2020 requesting compassionate release due to the COVID-19 pandemic and because he takes medication to treat his liver transplant that weakens his immune system and lowers his ability to fight off any disease, including COVID-19. (See Def. Mot. at 1-2.) He explains that he has completed two-thirds of his sentence and has less than three years left on his 10-year sentence. (Def. Mot. at 2.) By letter dated May 27, 2020, Defendant filed a second motion reasserting his arguments in support of compassionate release and adding that he has asthma. (See Def. Suppl. Mot.) The Government opposes the motions, arguing that (1) Defendant failed to exhaust his administrative remedies (Gov't Opp. at 14-16), (2) Defendant is a danger to the community (id. at 17-18), (3) Defendant's medical condition is not alone an extraordinary and compelling reason to justify release (id. at 18-20), and (4) the Section 3553(a) factors weigh against release (id. at 20). The Government also notes that Defendant did not include a release plan and his presumptive return to Queens, New York may not be "safer than Butner II for someone in defendant's position." (Gov't Opp. at 19-20.)

6

Defendant submitted a lengthy reply and attached documents, including his plans for release (see Def Reply at 18-19; Release Plan, D.E. 663, at ECF p. 37) and copies of requests to FCI Butner II's staff and Warden for release (Def. Reply at 6-9; Inmate Request Forms, D.E. 663, at ECF p. 41-51). Defendant argues, among other things, that (1) the spread of COVID-19 is not as contained at FCI Butner II as the Government suggests (Def. Reply at 2-4), (2) his documented liver condition, compromised immune system, and asthma diagnosis constitutes extraordinary and compelling reasons for release (id. at 4-6), (3) he timely submitted requests for compassionate release that were ignored by FCI Butner II's staff and Warden (id. at 6-9), (4) he is not a danger to the community and the Court should not punish him for crimes he did not plead guilty to and, as he maintains, he did not commit (id. at 10-12), and (5) he has spent nearly a decade preparing to return to society as a productive citizen, accepted responsibility as demonstrated by his self-surrender, and completed over a dozen programs while incarcerated (id. at 12-17).

A. Exhaustion of Administrative Remedies

As stated, in reply, Defendant attached his requests for release. One email, dated June 3, 2020, indicates that a "response [was] coming, pending the Warden's signature." (See Inmate Request Forms, D.E. 663, at ECF p. 49.) As such, the Court "need not wade into the exhaustion question because more than 30 days have lapsed

7

since the warden . . . received [Defendant's] petition for compassionate release." United States v. Genovese, No. 18-CR-0183, 2020 WL 4004164, at *2 (S.D.N.Y. July 15, 2020) (citations omitted). The Court thus turns to the merits of the motion.

B. Extraordinary and Compelling Reasons

Although Defendant does not submit medical records, the Court is well aware of Defendant's liver transplant and its resulting effects. The Government acknowledges that Defendant suffers from a compromised immune system due to his liver transplant but argues that a "liver transplant, without more, is simply not a sufficiently compelling reason to justify his release" for "such violent criminal conduct." (Gov't Opp. at 19.)

Extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii). Thus, compassionate release is generally limited to cases of serious illness or impairment, advanced age, or a need to care for a child, spouse, or registered partner. See id.; see also United States v. Traynor, No. 04-CR-0582, 2009 WL 368927, at *1 n.2 (E.D.N.Y. Feb. 13, 2009). Congress indicated that Section 3582(c)(1) "applies . . . to the unusual case in which the

8

defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." Traynor, 2009 WL 368927, at *1 (citing Senate Report No. 98-225, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3304).

Some courts hold that extraordinary and compelling reasons exist where a defendant's medical conditions fall within the high-risk category as defined by the Centers for Disease Control and Prevention ("CDC"). See, e.g., United States v. Zukerman, 16-CR-0194, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases); see also United States v. Serrano, No. 13-CR-0058, 2020 WL 5259571, at *3 (S.D.N.Y. Sept. 3, 2020). Indeed, in some cases, the Government concedes the same. See, e.g., United States v. Ramirez, No. 19-CR-0105, 2020 WL 4577492, at *2 (S.D.N.Y. Aug. 6, 2020) (the Government did not dispute that defendant's health conditions "constitute an extraordinary and compelling reason justifying release."). Other courts, however, have found "that the mere possibility of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme." See United States v. Quinones, No. 13-CR-0083, 2020 WL 4529365, at *5-6 (W.D.N.Y. Aug. 6, 2020) (emphasis in original) (collecting cases).

9

Here, Defendant, who is 29, does not fall into a high-risk age group for COVID-19 complications. Older Adults, Coronavirus Disease 2019 (COVID-19), CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Sept. 11, 2020). He does, however, suffer from a weakened immune system as a result of his liver transplant and the medications prescribed to treat his transplant. According to the CDC, individuals in an "immunocompromised state (weakened immune system) from solid organ transplant" are at increased risk of severe illness from COVID-19 and individuals with liver disease or who are in an "immunocompromised state (weakened immune system) from" use of immune weakening medicines might be at an increased risk for severe illness from COVID-19.[3] See People with Certain Medical Conditions, Coronavirus Disease 2019 (COVID-19), CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Sept. 11, 2020). It is true that "Defendant makes no specific

---

[3] Defendant has failed to demonstrate that he suffers from asthma while in custody where, as here, he did not submit records to support the diagnosis. Nonetheless, the CDC lists "asthma (moderate to severe)" as a condition that might cause an increase risk for severe illness from COVID-19. See People with Certain Medical Conditions, Coronavirus Disease 2019 (COVID-19), CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Sept. 11, 2020).

allegations that his medical needs have not been adequately addressed at" FCI Butner II. United States v. Chestnut, No. 12-CR-0837, 2020 WL 5371021, at *2 (S.D.N.Y. Sept. 8, 2020). However, "not only is he at a higher risk of serious illness if he contracts COVID-19 due to his underlying health conditions, but he is also at a higher risk of contracting COVID-19 due to his incarceration." United States v. Gross, No. 15-CR-0769, 2020 WL 1862251, at *3 (S.D.N.Y. Apr. 14, 2020) (emphasis in original). "[R]ealistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself." United States v. Butler, No. 19-CR-0834, 2020 WL 1689778, at *2 (S.D.N.Y. Apr. 7, 2020).

For these reasons, the Court agrees with the various other courts that "have recently concluded that 'extraordinary and compelling reasons' exist for purposes of the policy statement where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19." Gross, 2020 WL 1862251, at *3 (citing Zukerman, 2020 WL 1659880, at *5); United States v. Peters, No. 18-CR-0188, 2020 WL 2092617, at *4 (D. Conn. May 1, 2020) (finding 39-year-old defendant established extraordinary and compelling reason for release where "his underlying medical conditions [that leave him immunocompromised] put him in a high-risk category."); cf. United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *5 (E.D.N.Y.

11

Aug. 20, 2020) (Seybert, J.) (finding defendant "unable to adequately prove the existence of extraordinary and compelling reasons" where, among other reasons, he did not suffer from underlying health conditions rendering him at-risk). Therefore, this factor favors Defendant's early release.

### C. The 3553(a) Factors and Sentencing Commission Policy Statements

The Court next considers the Section 3553(a) factors and whether release is consistent with the Sentencing Commission's policy statements. See § 3582(c)(1)(A)(i). The Court must determine whether "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). In this analysis, the Court considers "whether the offense is a crime of violence," "the weight of the evidence against the [defendant]," and "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." See 18 U.S.C. § 3142(g)(1)-(4). The factors set forth in Sections 3553(a) and 3142(g) largely overlap and are therefore analyzed together. See Sections 3142(g) and 3553(a).

The Court recognizes, as it did at sentencing, that Defendant has taken significant steps towards rehabilitation. (See Sent'g Tr. at 5:9-14). However, the Section 3553(a) Factors largely weigh against Defendant's release and the Court cannot

12

conclude that he "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). As outlined in the PSR, prior to his guilty plea and conviction, in 2008, Defendant was convicted in State court for first degree robbery with a firearm[4] (PSR ¶ 46) and in 2009, Defendant was convicted in State court for criminal possession of a controlled substance (crack cocaine) (PSR ¶ 47). See United States v. Martinez, No. 12-CR-0862, 2020 WL 2079542, at *2 (S.D.N.Y. Apr. 30, 2020) ("When presented with motions for compassionate release due to COVID-19 brought by defendants with violent criminal histories, courts in this District have generally concluded that the Sentencing Commission's guidance cuts against granting release.").

Further, while two of the Section 3553(a) factors arguably favor an early release, "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care," they "are outweighed by the combined force of several other factors." United States v. Walter, No. 18-CR-0834, 2020 WL 1892063, at *3 (S.D.N.Y. Apr. 16, 2020) (citing Section 3553(a)). Indeed, [t]he nature and circumstances of his offense of conviction--to which he pleaded guilty--are serious." United States v. Asaro, No. 17-CR-0127, 2020 WL 1899221, at *7 (E.D.N.Y. Apr. 17, 2020). As a member of the Crips gang, Defendant pled

---

[4] Two other Crips members were named as Defendant's accomplices. (PSR ¶ 46.)

13

guilty to, and was convicted of, shooting at rival gang members. At this time, therefore, the Court declines to reduce Defendant's sentence for the reasons stated at his sentencing, which are incorporated by reference herein, including that "overwhelmingly there was force involved not only with this shooting, but the surrounding circumstances and the related gang activity," and that the crimes charged "were particularly violent" and "ruined [the] community." (Sent'g Tr. at 9:13-16, 10:20-11:9.) Moreover, granting Defendant's request for compassionate release, "when he is more than a year away from completing his carceral term, would disserve these important § 3553(a) factors." Martinez, 2020 WL 2079542, at *3; United States v. Knight, No. 17-CR-0335, 2020 WL 4751490, at *2 (S.D.N.Y. Aug. 17, 2020) ("Though Defendant has served more than 70% of his anticipated term of imprisonment, considering his expected good time credit, his crime is serious and warrants him serving his full term of imprisonment."). The Court accordingly denies release at this time.[5]

---

[5] To the extent not already pursued, Defendant may pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is reserved to the discretion of the BOP.

CONCLUSION

For the reasons stated, Defendant's motions for compassionate release (D.E. 632 and 642) are DENIED without prejudice to renew should his medical conditions or the circumstances at FCI Butner II materially worsen. The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Defendant at his address of record.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September  21 , 2020
       Central Islip, New York

15